# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 18-CR-0078 |
| | : | |
| EMORY EDWARD REED, III | : | |

## MEMORANDUM OPINION

**SCHMEHL, J.** /s/ JLS            June 29, 2021

The defendant Emory Reed, III, filed a Petition for Habeus Corpus under 28 U.S.C. § 2255, and a Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i). In his habeas corpus petition he argues that he should be released from prison or his period of incarceration should be reduced because his counsel was ineffective, the Court should have included a halfway house recommendation in his sentence, and he could not adequately defend himself at his sentencing hearing. The petition is denied because his arguments are, respectively, meritless, moot, and procedurally defaulted. Mr. Reed's Motion for Compassionate Release based upon the COVID-19 pandemic is denied because Mr. Reed has received a COVID-19 vaccination.

I.   FACTUAL BACKGROUND

The defendant, Emory Reed, III, is serving a sentence after pleading guilty to a bank robbery that he committed on December 4, 2017. This Court imposed a sentence of 156 months' imprisonment, with a recommendation that his last twelve months be served in a halfway house, amongst other penalties.

Mr. Reed was in-person before this Court at his sentencing hearing. Mr. Reed's Presentence Investigation Report provided that his total offense level was 29, a criminal history

category of VI, and the advisory guideline range for his offense was 151 to 188 months' imprisonment. At the sentencing, Mr. Reed acknowledged that the PSR was accurate, that his attorney answered all questions that he had, that he was satisfied with his attorney's representation, and Mr. Reed spoke to the Court about the crime, his past, particularly his childhood, and his plans for himself in the future. Further, Mr. Reed, through counsel, presented two witnesses to testify to Mr. Reed's giving nature, work ethic, employment skills, amongst other things. As for Mr. Reed's health, he received a Pfizer COVID-19 vaccine on March 11 and 31, 2021 while incarcerated.

II. ANALYSIS

1. Mr. Reed's Section 2255 Petition Lacks Merit.

    a) **Mr. Reed's Ineffective Counsel Claim regarding Disparity in Sentencing Lacks Merit.**

A defendant seeking relief under 28 U.S.C. section 2255 on an ineffective assistance of counsel claim must show that their (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) the defendant suffered prejudice as a result—meaning, but for counsel's deficient performance, the result of the proceeding would have been different, i.e., the deficiency deprived the defendant of a trial whose result is reliable. *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). The Third Circuit has recognized that it is "often appropriate for a reviewing court to consider the second part of the test, the prejudice to the defendant based on the 'assumed deficient conduct of counsel,' first." *United States v. Lee*, 2012 WL 12981963, at *4 (E.D. Pa. Nov. 9, 2012). "If the petitioner has not shown that he would have been better off if the alleged errors had not been made, it is unnecessary to consider whether his counsel's

performance was actually deficient." *Id.* (citing *McAleese v. Mazurkiewicz*, 1 F.3d 159, 170 (3d Cir. 1993)).

At sentencing, Mr. Reed acknowledged that his attorney answered all questions that he had, that he was satisfied with his attorney's representation, that the presentence report was accurate, and he stated that there was no reason why the Court should not proceed with sentencing. Further, the Court is familiar with Mr. Reed's representation, Mr. Ross Thompson, Esq., who is very able and competent counsel, and who has represented numerous clients before this Court. Mr. Thompson represented Mr. Reed to the best of his abilities, and not only was Mr. Thompson not ineffective, but he made no mistakes that the Court can find through the record. He properly filed pleadings in preparation for the sentencing and other matters, and he orally advocated for Mr. Reed at sentencing. Mr. Reed's single complaint that Mr. Thompson did not raise an argument about disparate sentencing treatment does not demonstrate deficient performance in any way. Mr. Thompson's professional decision to not raise a specific case that Mr. Reed mentioned did not prejudice Mr. Reed to the point where Mr. Thompson's performance fell to the level of ineffective or anywhere close to that regard.

### b) Mr. Reed's Mental Health and Halfway House Issues are Moot.

Mr. Reed argues that his mental health issues were not mentioned at sentencing. He also argues that he should be permitted to serve part of his sentence in a halfway house. Both of these arguments were addressed and resolved, thus, they are moot. Mr. Reed's mental health issues were highlighted by his counsel during sentencing, and I explicitly acknowledged the same while delivering Mr. Reed's sentence. *See* ECF # 47, Ex. D, 10:3-8; 25:25, 26:1-10. I also already recommended to the Bureau of Prisons that Mr. Reed be permitted to serve the final twelve months of his sentence in a halfway house. *See* ECF # 43, Court's Amended Judgment.

### c) Mr. Reed's Claim that he Could Not Adequately Explain his Defense in the Manner that he had Wished is Procedurally Defaulted.

"It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). A defendant procedurally defaults a claim "by failing to raise it on direct review," and "the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice.'" *Id.* at 622.

Mr. Reed did not raise this argument on appeal nor does he argue against procedural default, but nonetheless, he would lack merit in arguing against procedural default. Mr. Reed pled guilty, he was present at his sentencing, he answered all of Judge Schmehl's questions, he stated he was satisfied with his legal representation, both the Court and Mr. Reed's counsel acknowledged and considered Mr. Reed's mental health at his sentencing, and lastly, any other statement or argument that Mr. Reed could have made at his sentencing would not have changed the imposed sentence. Therefore, these arguments are procedurally defaulted because he did not raise them on appeal, and he was not prejudiced by his alleged lacking defense. Furthermore, Mr. Reed's sentence was within the Federal Sentencing Guidelines.

2. <u>Mr. Reed's Compassionate Release is Denied Because he is Not at an Adverse Risk of COVID-19 as he is Vaccinated.</u>

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The relevant Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." In application note 1 to the policy statement, the Commission identifies "extraordinary and compelling reasons" that may justify compassionate release as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> > (ii) The defendant is—
> >
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or

5

> > (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant
>
> > (i) is at least 65 years old;
> >
> > (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and
> >
> > (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Generally, the defendant has the burden to show circumstances that meet the test for compassionate release. *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

Accordingly, if a defendant's medical condition is found to be the type of condition that puts a defendant at the increased risk of an adverse outcome from COVID-19, a court must then analyze the factors under section 3553(a) and the Sentencing Commission's policy statement. Section 3582(c)(1)(A) requires a court to consider the "factors set forth in section 3553(a) to the extent they are applicable" before a sentence may be reduced. These factors require a

determination of whether the sentence served "reflect[s] the nature and circumstances of the offense and the history and characteristics of the defendant;" "reflect[s] the seriousness of the offense;" "promote[s] respect of the law;" and "afford[s] adequate deterrence to criminal conduct." The statute also instructs a court to consider the Sentencing Commission's policy statement, which allows a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.

Mr. Reed's compassionate release motion is premised on the COVID-19 pandemic and being at a high risk of an adverse outcome from COVID-19 given his imprisonment. Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit. Here, Mr. Reed has exercised the appropriate "self care" against COVID-19 by receiving a vaccination. Accordingly, Mr. Reed is no longer at a high risk of an adverse outcome from COVID-19, therefore, his motion is denied. *See, e.g.*, *United States v. Perry*, ECF #15-383, ECF #81 (E.D. Pa. Apr. 9, 2021); *United States v. Roper*, 2021 WL 963583 (E.D. Pa. Mar. 15, 2021); *United States v. Stiver*, 2021 WL 1110593 (W.D. Pa. Mar. 23, 2021); *United States v. Lipscomb*, 2021 WL 734519 (M.D. Fla. Feb. 25, 2021); *United States v. Groom*, 2021 WL 1220225 (S.D. Ohio Apr. 1, 2021).

III. CONCLUSION

For the reasons above, Mr. Reed's habeus corpus petition is denied, no evidentiary hearing is required, and his Motion for Compassionate Release is denied.

BY THE COURT:

/s/ Jeffrey L. Schmehl
**JEFFREY L. SCHMEHL, J.**